**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| DION CRITTLE, SR., *et al.*, ) | |
|    PLAINTIFFS, ) | |
|  ) | |
| v. ) | Cause No. 1:21-cv-2886-JRS-TAB |
|  ) | |
| THE TOWN OF DALEVILLE, *ET AL.*, ) | |
|    DEFENDANTS. ) | |

**MEMORANDUM IN SUPPORT OF SALEM TOWNSHIP DEFENDANTS' MOTION TO DISMISS**

Defendants SALEM TOWNSHIP, SALEM TOWNSHIP ADVISORY BOARD, SALEM TOWNSHIP TRUSTEE, CHARLES BRADLEY REAL, MICHAEL WAITMAN, and AMY POPE (collectively, the "Salem Township Defendants"), by and through their attorneys ELIZABETH A. KNIGHT, JOSEPH W. SMITH, and KATLYN M. CHRISTMAN of KNIGHT, HOPPE, KURNIK & KNIGHT, LTD., and provide the following memorandum of law in support of their Motion to Dismiss:

**I.     INTRODUCTION.**

Plaintiffs Dion Crittle, Sr. and Tanesha Huff are the parents of Dion Crittle, Jr. (hereinafter "Crittle") and the personal representatives of the Estate of Dion Crittle, Jr. ECF #8 ¶¶21-22. As the personal representatives of the Estate, Plaintiffs have brought this action against these Defendants and others, asserting various federal and state claims related to Crittle's death on December 9, 2019. These Defendants move to dismiss Counts 1, 2, and 3—federal constitutional claims brought pursuant to 42 U.S.C. § 1983—as against Real, Waitman, and Pope in their official capacities, if Counts 1, 2, and 3 assert any such official-capacity claims, because there are no facts pled to support an inference of *Monell* liability. The Salem Township Defendants also move to dismiss Counts 4 and 5 of the Amended Complaint—a state-law wrongful death claim and a state-law survival claim—because they are immune therefrom under

the Indiana Tort Claims Act and Indiana common law, and for the additional reasons discussed below.  As discussed below, the Court should grant these Defendants' motion.

## II. ALLEGATIONS OF THE AMENDED COMPLAINT.[1]

On December 9, 2019, at about 3:30 p.m., Crittle was operating his motor vehicle on the mile 234D on-ramp to southbound I-69 in or near Daleville, Indiana, when he lost control of the vehicle and it left the highway.  ECF #8 ¶¶25-27.  The vehicle subsequently hit a tree.  ECF #8 ¶28.

Defendants Jett, Real, Waitman, Pope, and Maxwell responded to the scene and observed Crittle.  ECF #8 ¶29.  Defendants Jett, Real, Waitman, Pope, and Maxwell were aware from their observations of Crittle that he required medical attention and/or was in a medical crisis.  ECF #8 ¶30.  They did not suspect Crittle of having committed any criminal offense, they did not suspect him of being in possession of a weapon, and they did not have probable cause to believe that Crittle posed a significant threat of death or serious physical injury to anyone.  ECF #8 ¶¶31-32, 44.  Crittle did not pose a threat to anyone at the scene—he did not use or threaten to use physical force on anyone.  ECF #8 ¶¶33-35.

Defendants Jett, Real, and Waitman used physical force to handcuff Crittle with the purpose of arresting him.  ECF #8 ¶36.  They restrained Crittle, handcuffed, in a prone position on the ground and placed body weight on him.  ECF #8 ¶¶37-38.  Defendants Jett, Real, Maxwell were aware that placing pressure upon the body of someone restrained in this manner significantly increased the likelihood of asphyxiation and death.  ECF #8 ¶39.

---

[1] As required under Federal Rule of Civil Procedure 12(b)(6), Defendants accept as true the factual allegations of the Amended Complaint.  By presenting Plaintiffs' allegations herein, these Defendants do not admit that any such allegations are true.  In Defendants Real, Waitman, and Pope's Answer to Counts 1, 2, and 3, filed contemporaneously herewith, Defendants Real, Waitman, and Pope deny most of Plaintiffs' factual allegations.  These Defendants expect discovery in this action to contradict many of the "facts" pled in the Amended Complaint.

Defendants Jett, Real, Waitman, Pope, and Maxwell observed Crittle become medically nonresponsive, and they were aware that he was suffering a serious medical condition and required medical attention. ECF #8 ¶¶40-41. Despite this awareness, Defendants Jett, Real, and Waitman continued to restrain Crittle rather than provide him with prompt medical attention. ECF #8 ¶43.

Crittle died as a result of the negligent and wrongful actions of Defendants Jett, Real, Waitman, and Pope. ECF #8 ¶82. Plaintiffs alternatively allege that Crittle suffered injury as a result of the negligent and wrongful actions of Defendants Jett, Real, Waitman, and Pope. ECF #8 ¶¶87-88.

At all relevant times, Defendants Real, Waitman, and Pope acted within the scope of their employment. ECF #8 ¶¶12-17, 80-81, 85-86.

### III.  ARGUMENT.

When reviewing a Rule 12(b)(6) motion to dismiss, the Court takes the well-pled allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Kirk v. City of Kokomo,* 772 F. Supp. 2d 983, 988 (S.D. Ind. 2011)(*citing Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege enough facts that "plausibly suggest that the Plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Wilson v. Price*, 624 F.3d 389, 391-391 (7th Cir. 2010). Detailed factual allegations are not required, but the plaintiff must allege facts that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. A defendant may raise an affirmative defense in a motion to dismiss if "all the facts necessary to rule on the

affirmative defense are properly before the court on the motion to dismiss." *U.S. v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). When reviewing a Rule 12(b)(6) motion to dismiss, the Court can consider matters that are proper subjects of judicial notice, such as state-court records, without converting the motion to dismiss into a motion for summary judgment. *Henson v. CSC Credit Svcs., Inc.*, 29 F.3d 280, 284 (7th Cir. 1994).

### A. TO THE EXTENT THAT COUNTS 1, 2, AND 3 ASSERT OFFICIAL-CAPACITY CLAIMS AGAINST REAL, WAITMAN, AND POPE, THESE CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS PLEAD NO FACTS SUPPORTING *MONELL* LIABILITY.

The Amended Complaint is unclear about whether Counts 1, 2, and 3 are asserted against Real, Waitman, and Pope in their individual capacities only, or whether these claims are asserted Real, Waitman, and Pope in both their individual and official capacities. The caption of the Amended Complaint names Real, Waitman, and Pope in both their individual and official capacities, but Counts 1, 2, and 3 do not specify in what capacity Real, Waitman, and Pope are being sued. In the absence of a specific designation by Plaintiff, courts look to the nature of the allegations in order to determine whether the claim is an individual-capacity claim or an official-capacity claim. *Hill v. Shelander*, 924 F.2d 1370, 1373-74 (7th Cir. 1991)("Hill's complaint when 'read in its entirety' plainly shows that an individual capacity suit was intended.").

The Amended Complaint supports only individual-capacity claims in Counts 1, 2, and 3. Plaintiffs seek punitive damages in Counts 1, 2, and 3, which may not be recovered in official-capacity claims. *See id.* at 1374. Nor does the Amended Complaint seek injunctive relief against Real, Waitman, or Pope in their capacities as governmental officials. *Cf. id.* In addition to the relief requested, the allegedly-unconstitutional conduct involves Real, Waitman, and Pope's "individual actions and nowhere alludes to an official policy or custom. . . ." *Id.* When reviewing the Amended Complaint in its entirety, Counts 1, 2, and 3 clearly only assert

individual-capacity claims.  The Court should therefore construe Counts 1, 2, and 3 of the Amended Complaint as only asserting individual-capacity claims.

However, if the Court finds that Counts 1, 2, and 3 assert both individual-capacity and official-capacity claims, the Court should dismiss the claims against Real, Waitman, and Pope in their official capacities for failure to state a claim.

It is axiomatic that there is no *respondeat superior* liability under Section 1983.  *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978).  In order to succeed on a Section 1983 claim against a municipal entity, a plaintiff must prove (1) that he suffered a constitutional injury and (2) that a municipal policy or custom was the "moving force" behind the constitutional violation.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819 (1985); *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994).  A municipal policy or custom can be shown to be the moving force behind a constitutional violation in any one of three ways:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Abbott v. Vill. of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir. 2000).  Additionally, there can be no *Monell* liability where the plaintiff did not suffer a deprivation of his constitutional rights by an employee of the government entity.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Plaintiffs do not plead any facts from which it could be inferred that an official policy, widespread practice, or final policymaker action was the moving force behind the alleged deprivation of Crittle's constitutional rights.  Plaintiffs do not plead that Crittle's constitutional rights were deprived as a result of the enforcement of an express policy, that an official with final

policymaking authority deprived him of his constitutional rights, or that his constitutional rights were deprived as a result of a widespread practice or custom of constitutional violations that was ignored. Any official-capacity claims against Real, Waitman, and Pope would therefore be based solely upon vicarious *respondeat superior* liability, which is impermissible under Section 1983. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Counts 1, 2, and 3 do not assert any official-capacity claims against Real, Waitman, or Pope. Even if Counts 1, 2, and 3 could be read to assert official-capacity claims against Real, Waitman, and Pope, any such official-capacity claims are unsupported by any allegations from which it could be inferred that an official governmental policy was the moving force behind the alleged deprivation of Crittle's constitutional rights. The Court should therefore construe Counts 1, 2, and 3 of the Amended Complaint as asserting only individual-capacity claims, or, alternatively, the Court should dismiss any official-capacity claims asserted against Real, Waitman, and Pope in Counts 1, 2, and 3.

### B. COUNTS 4 AND 5 FAIL TO STATE ANY CLAIMS AGAINST THE SALEM TOWNSHIP DEFENDANTS BECAUSE THEY ARE ENTITLED TO COMMON LAW IMMUNITY FOR FAILURE TO PROVIDE EMERGENCY AID.

Plaintiffs allege in Counts 4 and 5 of the Amended Complaint that Real, Waitman, and Pope failed to provide Crittle with reasonable medical attention, even though they were aware that he was suffering from a serious medical condition that required medical attention. *See* ECF #8 ¶¶41-41, 83, 88. These claims are barred under Indiana common law immunity for failure to provide adequate emergency aid.

Although the Indiana Supreme Court abolished common law sovereign immunity in almost all respects in *Campbell v. State*, 284 N.E.2d 733 (Ind. 1972), several aspects of common law sovereign immunity remain. *Benton v. City of Oakland City*, 721 N.E.2d 224, 227 (Ind. 1999). One aspect of common law immunity that has been retained is immunity from claims that

the government failed to provide adequate police protection to prevent crime. *Id.* This immunity has been recognized to extend to other situations that are "so closely akin to adequate police protection" that they should likewise be treated as an exception to governmental tort liability. *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204 (Ind. Ct. App. 2011). One of those situations is the alleged failure to provide adequate rescue services. The Indiana Court of Appeals has held that common law immunity applies to an alleged failure to provide adequate rescue services because a "municipality's provision of emergency rescue services is clearly like the provision of police and fire protection in that all of these are necessary for the safety and well-being of citizens, which . . . is the primary function of government." *City of Hammond v. Cipich ex rel. Skowronek*, 788 N.E.2d 1273, 1283 (Ind. Ct. App. 2003). The Court of Appeals further recognized in *Cipich* that, "in many cases, the provision of emergency rescue services [is] not just similar to the provision of police and fire protection, but [is] an inextricable component of such services." *Id*.

In *Cipich*, a young man drove his car through a gate at the Hammond Marina, over a curb, across some rocks, and into Lake Michigan. *Id.* at 1276. The marina security guards called the Hammond Fire Department, which dispatched emergency medical technicians and firefighters. *Id.* The EMTs' and firefighters' initial efforts to rescue Cipich were unsuccessful. *Id.* at 1276-77. Bystanders offered to jump in and help, but were instructed to stay out of the icy waters. *Id.* at 1277. The fire chief issued an ambiguous order that delayed emergency responders' efforts to help Cipich. *Id.* The emergency responders were unable to get Cipich out of the water for about half an hour, and when he was pulled from the water he was not breathing and had no pulse. *Id.* They were able to revive him, but, as a result of prolonged oxygen

deprivation, he sustained serious brain damage and was expected to remain in a vegetative state for the rest of his life. *Id.*

Despite these compelling facts, the Court of Appeals held that Indiana common law immunity barred Cipich's claim. *Id.* at 1283. The holding of *Cipich* is clearly applicable here. Plaintiffs allege that Defendants were dispatched to a car accident, that Crittle was suffering a serious medical condition and required medical attention, *see* ECF #8 ¶41, and that the Defendants mishandled the situation causing Crittle injury and/or death. Immunity therefore applies.

Other opinions have also recognized that the failure to provide emergency rescue services is immune under Indiana common law.

In *City of Peru v. Lewis*, the parents claimed that firefighters negligently performed their duties by failing to rescue one of their children during a fire even though some firefighters saw the child in the burning house. *City of Peru v. Lewis*, 950 N.E.2d 1, 3 (Ind. Ct. App. 2011). The plaintiffs alleged that the fire department was negligent by not making a search for victims a priority, by favoring ventilation of the house instead of searching for victims, and by not communicating to firefighters that people might be present in the house. *Id*. at 6. The court held that, while the allegations were tragic, all fell within the ambit of failure to provide adequate fire protection, and therefore, the court was compelled to conclude that the doctrine of common law immunity barred the claims against the City defendants. *Id*.

In *Evans v. City of Jeffersonville*, Judge Barker held that Indiana common law immunity barred an estate's negligence claim based on the alleged failure to enter the decedent's home and call for medical assistance during a wellness check. 2016 WL 881191, *10 (S.D. Ind., Mar. 8, 2016). Judge Barker noted that "the failure to provide adequate rescue services necessary to aid

those in emergency situations" is an exception to governmental tort liability, and found that the plaintiff's allegations of the police officers' failure to provide adequate rescue services to a subject, even after reports of distressing sounds heard from the home, were so similar to the allegations in *Cipich* that it fell within the limited exception to governmental liability. *Id*. Accordingly, Judge Barker determined that the police officers in that case were also entitled to common immunity based on allegations that they failed to adequately perform rescue services. *Id*.

The allegations of the Amended Complaint dovetail with the above-cited precedents. Plaintiffs allege that Defendants failed to properly respond to Crittle's car accident and medical emergency. Common law immunity therefore applies, as found in *Cipich*, *Lewis*, and *Evans*. No Indiana precedent of which the undersigned is aware has ever precluded the application of common law immunity in circumstances similar to this case. The Salem Township Defendants are therefore entitled to common law immunity for the provision of emergency medical services, and the Court should dismiss Counts 4 and 5 of the Amended Complaint as to these Defendants with prejudice.

### C. COUNTS 4 AND 5 FAIL TO STATE ANY CLAIMS AGAINST THE SALEM TOWNSHIP DEFENDANTS BECAUSE NO NOTICE OF TORT CLAIM WAS FILED BY AN AUTHORIZED REPRESENTATIVE OF THE ESTATE OF DION CRITTLE, JR. WITHIN 180 DAYS AS REQUIRED BY IC 34-13-3-8.

The Indiana Tort Claims Act requires a claimant to file a notice of tort claim with the governing body of a political subdivision and with the Indiana political subdivision risk management commission within 180 days after a loss occurs, or any claim arising under Indiana law against the political subdivision is barred. *See* IC 34-13-3-8.[2] The claimant bears the burden

---

[2] This provision also applies to claims against asserted against an employee of a political subdivision in his or her individual capacity for acts within his or her scope of employment. *Chang v. Purdue University*, 985 N.E.2d 35, 51 (Ind. Ct. App. 2013).

of proving compliance with the notice statute. *Stone v. Wright*, 133 N.E.3d 210, 2017 (Ind. Ct. App. 2019). The Estate of Dion Crittle, Jr. did not file the mandatory notice of tort claim with the governing body of Salem Township within 180 days after Crittle's death.[3] The Estate's wrongful death and survival claims are therefore barred.

Crittle, Sr. and Huff filed their Petition for Appointment of Personal Representative, in which they sought authority to pursue wrongful death claims related to Crittle's death, on November 5, 2021, long after the 180-day deadline for filing a notice of tort claim under IC 34-13-3-8. *See* Exhibit A, Petition, *In the Matter of the Estate of Dion Crittle, Jr., Deceased*, 18C01-2111-EU-179. The probate court appointed Crittle, Sr. and Huff as personal representatives of Crittle's estate and issued Letters of Administration on November 15, 2021. *See* Exhibit B, Order Appointing Personal Representative, *In the Matter of the Estate of Dion Crittle, Jr., Deceased*, 18C01-2111-EU-179; Exhibit C, Letters of Administration, *In the Matter of the Estate of Dion Crittle, Jr., Deceased*, 18C01-2111-EU-179. Until the probate court issued those letters, no one was authorized to act on behalf of Crittle's estate.

Indiana law is clear that a personal representative is an officer of the probate court, and only authorized to take such actions as may be authorized by statute or court order. It is the probate court, not a decedent's heirs, who determines whether there are claims for a decedent's personal representative to pursue. *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 392 (Ind. Ct. App. 2003) The Court of Appeals observed in *Inlow* that IC 29-1-13-1 "gives a personal representative the right to the decedent's contract and tort claims, along with decedent's other property interests. No such authority is given to heirs or creditors." *Id.* The

---

[3] It appears that an attorney claiming to represent the Estate of Dion Crittle, Jr. filed a notice of tort claim with the Town of Daleville on or about May 28, 2020. However, as discussed herein, no one was authorized to act on behalf of the Estate of Dion Crittle, Jr. on May 28, 2020. Further, Salem Township has no record of receiving any notice of tort claim from anyone relating to Crittle's death.

Court of Appeals further observed that IC 29-1-13-3 "establishes the personal representative's authority to maintain any suit 'for any demand of whatever nature due the decedent or his estate.' [citation omitted]  It makes clear that any claim arising before or after the decedent's death is left to the personal representative to bring.  No such authority is given to heirs or creditors." *Id.*  The Court of Appeals further observed that IC 29-1-13-5 "permits a personal representative, on order of the court, to 'effect a fair and reasonable compromise with any debtor or other obligor, or to extend, renew or in any manner modify the terms of any obligation owing to the estate.  [citation omitted]  Once again, no such authority is given to heirs or creditors." *Id.*

A personal representative, even in a so-called "unsupervised estate," is always under the control and direction of the probate court.  *See* IC 29-1-7.5-2 (providing that the probate court can, on its own motion, revoke an order of unsupervised administration and require supervised administration if the court finds that supervised administration is in the best interests of the estate, creditors, taxing authorities, heirs, legatees, or devisees).  This rule was discussed in *Inlow*, where the Court of Appeals held that disappointed heirs "may petition the probate court either to direct the successor personal representative to pursue these claims or to appoint a personal representative to do so.  *Provided, of course, a probate court would judge these claims worth pursuing*." *Id.* at 400 (emphasis added); *see also Pope by Smith v. Pope*, 701 N.E.2d 587 (Ind. Ct. App. 1998)(discussing statutory authority for probate court to appoint special administrator for the purpose of pursing a wrongful death claim, and the probate court's authority to remove the special administrator); *South v. White River Farm Bureau Co-op.*, 639 N.E.2d 671, 673-74 (Ind. Ct. App. 1994)(wrongful death action was barred because it was not authorized by the probate court).

An estate representative "remains under the authority of the probate court." *Pope*, 701 N.E.2d at 591.  Nothing in the Probate Code permits an heir or anyone else to assert a claim on behalf of a decedent's estate before the probate court appoints a personal representative.  As the Indiana Court of Appeals recognized in *Inlow*, the only person authorized to assert claims that may be asserted by an estate is the duly-appointed personal representative of the estate.  A tort claim notice filed by a decedent's heirs before the appointment of a personal representative for the decedent's estate is unauthorized by the probate court and therefore ineffective.  Because no probate proceeding was initiated within 180 days of Crittle's death, the probate court had not yet had an opportunity to determine whether a wrongful death claim should be pursued, and had not authorized anyone to file a notice of tort claim on behalf of Crittle's estate.  The Estate's state-law claims are therefore barred for failure to comply with the Indiana Tort Claims Act notice requirement.

Other decisions from this District support this conclusion.  In *Dameron v. City of Scottsburg*, then-District Judge Hamilton, relying on Indiana appellate precedent, noted that "a claimant may not rely upon the notice given by another party, but must serve the governmental entity with his own notice of a tort claim in order to preserve his cause of action."  36 F. Supp. 2d 821, 837 (S.D. Ind. 1998)(citing *Rosga v. City of Hammond*, 493 N.E.2d 787, 789 (Ind. Ct. App. 1985)).  Judge Hamilton also quoted *Rosga*'s holding that, because "'no notice was given by, or on behalf of, the claimant *by any authorized representative*,'" the claim in *Rosga* was barred.  *Id.* (emphasis added).

Judge Lawrence also recognized in *Lovett v. Herbert* that the failure to file a notice of tort claim by an authorized representative of a decedent's estate bars any subsequent wrongful death claim by the estate.  In *Lovett*, the decedent filed a notice of tort claim before his death.  2017

WL 819716, *5 (S.D. Ind., Mar. 2, 2017). He later died as a result of the injuries identified in the notice of tort claim, and his estate filed a wrongful death action, but the estate did not file a notice of tort claim. *Id.* Judge Lawrence found that the estate's failure to file a notice of tort claim barred the wrongful death claim. *Id.*, *rev'd on other grounds*, 907 F.3d 986 (7th Cir. 2018). The estate moved for reconsideration, and Judge Lawrence upheld his decision:

> With respect to the Plaintiffs' state law wrongful death claim, the Plaintiffs point out that "a tort claim was filed within 180 days of the deliberately indifferent acts leading to [the decedent]'s fall, it informed the County that they intended to pursue claims arising out of those acts, and it contained detailed information about the accident." The Plaintiffs correctly note that the Indiana Tort Claims Act does not require a plaintiff to identify specific claims or causes of action in the notice. However, as the Defendants argue, a wrongful death action is not a continuation of a personal injury case; rather, a wrongful death action is a specific cause of action, with its own accrual date and its own plaintiff.

*Lovett v. Herbert*, 2018 WL 1183908, *2 (S.D. Ind., Mar. 7, 2018)(record citation omitted). Because a wrongful death claim has "its own plaintiff"—the personal representative of the estate—only a notice filed by the duly-appointed personal representative satisfies the Indiana Tort Claims Act notice requirement.

An estate may not rely on notice provided by another party, but must, through an authorized representative, file its own notice of tort claim within 180 days after the loss. If no notice is filed by an authorized representative of the estate within 180 days after the loss, any claim that the estate could have brought under Indiana law is barred. Because there was no authorized representative of the Estate of Dion Crittle, Jr. until November 15, 2021, long after the 180-day notice deadline had expired, any claims that the estate could have asserted against the Salem Township Defendants under Indiana law are barred, and the Court should dismiss Counts 4 and 5 as against these Defendants with prejudice.

- 13 -

### D. THE SALEM TOWNSHIP ADVISORY BOARD IS NOT AN ENTITY SUBJECT TO SUIT.

Claims asserted against non-suable entities are subject to dismissal for failure to state a claim. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Woodward v. Morgan*, 2021 WL 5323270, *2 (S.D. Ind., Nov. 15, 2021)(citing *Smith*). The capacity of a governmental entity to sue or be sued is governed by state law. Fed. R. Civ. P. 17(b)(3).

The Salem Township Advisory Board is not a suable entity. Indiana law generally provides that a "unit" may sue and be sued. IC 36-1-4-3. Indiana law defines "unit" as a county, municipality, or township. IC 36-1-2-23. These statutes therefore do not bestow capacity on the Salem Township Advisory Board to sue or be sued. Further, Indiana statutes governing elected township boards, IC 36-6-6-1 *et seq.*, do not provide that township boards are separate legal entities that may sue or be sued. Rather, the Indiana statutes provide that an elected township board is simply the legislative body of the township. IC 36-6-6-2(c).

There is no provision of Indiana law granting separate legal status to the Salem Township Advisory Board. It therefore lacks any legal existence separate from Salem Township, and any claims against the Salem Township Advisory Board should therefore be dismissed for failure to state a claim for which relief can be granted.

### E. THE CLAIMS ASSERTED AGAINST THE SALEM TOWNSHIP ADVISORY BOARD, SALEM TOWNSHIP TRUSTEE, AND REAL, WAITMAN, AND POPE IN THEIR OFFICIAL CAPACITIES ARE DUPLICATIVE OF PLAINTIFFS' CLAIMS AGAINST SALEM TOWNSHIP, AND SHOULD BE DISMISSED.

Even if the Counts 4 and 5 survive as to Salem Township, the claims in Counts 4 and 5 that are asserted against the Salem Township Advisory Board, Salem Township Trustee, and Real, Waitman, and Pope in their official capacities are redundant of the claims that are asserted against Salem Township in Counts 4 and 5. If Counts 4 and 5 survive as to Salem Township, Counts 4 and 5 as to these other Salem Township Defendants should be dismissed as redundant.

A claim against a government official in their official capacity is the equivalent of asserting the claim against the official's governmental employer. *Monell*, 436 U.S. at 690 n.55. It is therefore redundant to bring a claim against both a governmental entity and an official of the governmental entity in his or her official capacity. *See, e.g., Gillo v. Gary Comm. Sch. Corp.*, 2016 WL 4592200, *8 (N.D. Ind., Sept. 2, 2016)(noting that ADA claim against individual defendants in their official capacities "would be redundant since Plaintiff named as Defendants the entities to which the officials belong"); *Hendrix v. City of Michigan City, Ind.*, 2014 WL 465639, *2 (N.D. Ind., Feb. 5, 2014)("It is widely accepted that claims against an officer are a legal action against the city or county government and such claims should be dismissed as redundant and unnecessary when the city or municipality is a properly named defendant." (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Asserting a claim against the executive office of a governmental entity is also redundant where the governmental entity is named. *Messner v. Calderone*, 2007 WL 1832116, *5 (N.D. Ill., June 25, 2007); *see also* IC 36-6-4-2(a) (the township trustee is the executive officer of the township). The same is true of claims against a legislative body. *Bratton v. Town of Fortville*, 2010 WL 2291853, *4 (S.D. Ind., June 2, 2010). Redundant claims are typically dismissed under these circumstances. *See, e.g., Orr v. Ferebee*, 2017 WL 1509309, *2 (S.D. Ind., Apr. 27, 2017). If Counts 4 and 5 survive as to Salem Township, the Court should dismiss the redundant claims.

    **F. DEFENDANTS REAL, WAITMAN, AND POPE ARE IMMUNE FROM COUNTS 4 AND 5 IN THEIR INDIVIDUAL CAPACITIES.**

Under Indiana law, a governmental employee is immune from claims arising from actions taken within the scope of their employment. *See* IC 34-13-3-5(b). Where the governmental employee-defendant acted within the scope of their employment, the claim may only be asserted against their employer. IC 34-13-3-5(b). If the complaint alleges that the

governmental employee-defendant acted within the scope of their employment, then the "government employee defendant has a complete defense to the action. . . ." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003).

Plaintiffs allege in Counts 4 and 5 that "At all relevant times, Defendants JETT, REAL, WAITMAN, and POPE, where acting within the scope of their employment." ECF #8 ¶¶81, 86. Defendants Real, Waitman, and Pope therefore have a "complete defense" to Plaintiffs' wrongful death and survival actions asserted against them in their individual capacities, and the Court should dismiss Counts 4 and 5 as to Real, Waitman, and Pope with prejudice.

### IV.   CONCLUSION.

For the above and foregoing reasons, the Court should construe Counts 1, 2, and 3 as asserting only individual-capacity claims, or, alternatively, dismiss any official-capacity claims asserted against Defendants Real, Waitman, and Pope in Counts 1, 2, and 3, and should dismiss Counts 4 and 5 of the Amended Complaint as to these Defendants with prejudice.

Respectfully submitted,

/s/ Elizabeth A. Knight
Elizabeth A. Knight

/s/ Joseph W. Smith
Joseph W. Smith

Katlyn M. Christman
Katlyn M. Christman

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
233 East 84th Drive, Suite 301
Merrillville, IN  46410
219/322-0830; FAX: 219/322-0834
Email: Eknight@khkklaw.com
       Jsmith@khkklaw.com
       Kchristman@khkklaw.com
Attorneys for SALEM TOWNSHIP, SALEM TOWNSHIP ADVISORY BOARD, SALEM TOWNSHIP TRUSTEE, CHARLES BRADLEY REAL, MICHAEL WAITMAN, and AMY POPE

**CERTIFICATE OF SERVICE**

      I hereby certify that, on the 1st day of March 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

- Nicolette Ward nward@rblaw.net
- Kyle A. Jones kjones@ncs-law.com
- Paul Thomas Belch pbelch@travelers.com
- Elizabeth A. Knight Eknight@khkklaw.com
- Joseph W. Smith Jsmith@khkklaw.com
- Katlyn M. Christman Kchristman@khkklaw.com

**MANUAL NOTICE:** **None.**

                                                      /s/ Joseph W. Smith

22-03-01 MTD Memo 7833